## Bureau of Correction Psychiatric Care

CREAMER, Attorney General, June 23, 1972.—You have asked for an opinion concerning the legality of your using a ward at Norristown State Hospital for inpatient care and treatment of residents sentenced to State Correctional Institutions. It is our understanding that the Norristown State Hospital will provide the space necessary for this facility and that the Bureau of Correction will provide all of the personnel necessary for the care and custody of the residents. We also understand that the medical services will be provided by and under the direction of a qualified psychiatrist in the employ of the Bureau of Correction.

The need for such a facility has been apparent for some time. In the population of our State correctional institutions there are a number of residents at any given time who are in need of immediate, intensive psychiatric care. Although these residents constitute a very small percentage of the total population, they do create serious problems for the correctional institution in that our institutions do not have adequate, medical facilities for the care of such residents and we do not have available the medical personnel who are necessary to care for such residents on a 24 hour-a-day basis. Heretofore, there were two alternatives available for resolving this problem. One was the transfer of the resident under section 412 of the Mental Health and Mental Retardation Act of October 20, 1966, 50 PS §4412, to a State mental hospital under the jurisdiction of the Department of Public Welfare. Such transfer was accomplished without court intervention and while it may have been expeditious, there were doubts about the constitutionality of such procedure. These doubts were expressed in a memorandum of law by this department in the case of Commonwealth

v. John Ronald Colello, March session, 1968, no. 56, Court of Common Pleas, Mercer County, Pa. As a result of that case, new procedures were developed and expressed in Administrative Directive No. 17. This directive, which was developed with the cooperation of the Department of Public Welfare, essentially required that a court order be obtained prior to the transfer of a resident to a State Mental Hospital. This procedure was virtually identical to the second alternative method of handling such cases.

We have found, however, that this method also presents difficulties. The difficulty is created by the backlog in our courts. Frequently, it has taken weeks or months to obtain a disposition from the courts. During this time, the resident's condition may deteriorate and the possibility for his eventual recovery is diminished.

The use of a ward at the Norristown State Hospital constitutes a most constructive solution to the problem. We have been advised that such space is available, that adequate security arrangements can be made, that the Department of Public Welfare is agreeable to this arrangement, that medical personnel presently in the employ of the Bureau of Correction will be available to provide medical supervision, that correctional personnel can be made available to maintain the corrections functions and that this arrangement will provide the intensive 24-hour-a-day care so necessary for the subject residents.

Our laws do not expressly provide for the establishment of such a facility. We believe, and you are hereby advised, that such a facility is implicitly authorized under applicable law and that, therefore, you are authorized to establish the facility with the

concurrence and cooperation of the Department of Public Welfare.

The implicit authority to which we refer is provided in both statutory law and in the long-standing practices in this Commonwealth. 61 PS §3, requires that:

"All prisoners who are found to be mentally weak shall be segregated from the other prisoners and not allowed to be among or mingle with those whose mentality is found to be normal."

This provision applies to the subject residents and we believe that it requires not only segregation but adequate medical treatment for the "mental weakness." As we noted above, it has been most difficult to provide adequate care under the present circumstances. It is, therefore, incumbent upon you to seek other arrangements to carry out your duties under the above-cited statute.

The following provisions of law recognize your authority to operate off-institution-grounds facilities for residents: 71 PS §301 (pocket parts); 71 PS §304.1 (pocket parts); and 18 PS §4309 (pocket parts).

In addition, for many years the Bureau of Correction has operated off-institution-grounds facilities such as forestry camps for the employment and rehabilitation of residents. We believe that this well-established practice indicates that you have the implicit authority to operate such a facility at Norristown State Hospital.

In conclusion, I repeat that we believe and, you are hereby authorized to make the necessary arrangements with the Department of Public Welfare for the use of a ward at the Norristown State Hospital for the care and treatment of residents of our institutions.